IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BETTY J. DUMAS,                )
                               )
            Plaintiff,         )
                               )
     v.                        )   No. 02 C 6271
                               )
DOVENMUEHLE MORTGAGE, INC., et al.,)
                               )
            Defendants.        )

## MEMORANDUM OPINION AND ORDER

Betty Dumas ("Dumas") has sued Dovenmuehle Mortgage, Inc. and its President William A. Mynatt, Jr. (collectively "Dovenmuehle," treated for convenience as a singular noun), asserting violations of several federal statutes as well as of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Act"). Dovenmuehle has responded with a Fed. R. Civ. P. ("Rule") 56 motion for summary judgment.

Throughout the proceedings Dumas has aggressively played the "race card" in an obvious effort to convert her case into a forum for her views about the state of race in modern society.[1] In doing so she has regrettably called into question the integrity not only of Dovenmuehle but also of this Court and of the legal system in general. But the legal sufficiency of claims is measured by evidence rather than by their vitriolic content, and it is abundantly clear that Dumas' entire case is fundamentally

---

[1] As but the latest example of that attempt, this opinion has attached the first page of Dumas' most recent filing.

deficient in evidentiary terms. Because Dovenmuehle has supplied evidence that demonstrates that none of Dumas' claims is even arguably viable, and because Dumas has failed to summon up any admissible evidence of her own that creates any material issue of fact in that respect, the Rule 56 motion is granted and this action is dismissed.

## Rule 56 Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But to avoid summary judgment a nonmovant "must produce more than a scintilla of evidence to support his position" that a genuine issue of material fact exists (Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001)) and "must set forth specific facts that demonstrate a genuine issue of triable fact" (id.). Ultimately summary judgment is appropriate only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

This District Court has implemented Rule 56 through its LR 56.1, which structures the bidding by requiring both sides to submit factual statements supported by record evidence. In

particular, LR 56.1(b)(3)(A) **requires** a nonmovant such as Dumas who seeks to avoid summary judgment to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Despite having been informed of that requirement in detail by this Court's customary letter to pro se litigants facing a Rule 56 motion, and despite several extensions granted to enable her to comply, Dumas has tendered a statement that is wholly inadequate in LR 56.1(b)(3)(A) terms.

Although Dumas properly admits many facts contained in Dovenmuehle's opening LR 56.1(a) statement, her attempted response to many others is either (1) to object and disagree or (2) to claim insufficient knowledge to agree or disagree. Those nonresponses just won't do. LR 56.1 has been devised to distill the record presented to the court into a manageable series of clearly admitted or disputed facts. Accordingly, responses that mistakenly echo the second sentence of Rule 8(b)--which to begin with applies only to responsive pleadings, not to Rule 56 submissions--by stating that the declarant does not have sufficient information to speak to a fact, or responses that fail to cite any record evidence to support a controverted assertion, are ineffective. And any factual assertions that are thus inadequately addressed are deemed admitted (McGuire v. UPS, 152

F.3d 673, 675 (7th Cir. 1998)).

Despite the operative ground rules having been spelled out both in LR 56.1 and in this Court's explanatory letter to Dumas, only one assertion in her LR 56.1 statement is not subject to the deficiencies just described. That being the case, this Court would be well justified, as the price for her extensive noncompliance, in refusing to consider all other evidence submitted by Dumas (see, e.g., Cichon v. Exelon Generation Co., 401 F.3d 803, 809-10 (7th Cir. 2005)). But lest Dumas mistakenly think that her case is being decided on a merely technical basis, this opinion will put aside those shortcomings in her LR 56.1 statement (despite their seriousness) in favor of considering her claims in light of all of the admissible evidence she has presented.[2]

None of that evidence creates any material (that is, outcome-determinative) issues of fact here. To the contrary, several of Dumas' claims must be dismissed because they fail even

---

[2] That does not of course mean that this Court will blindly credit all matters that Dumas has proffered. So for example Rule 56(e) expressly states that unsworn statements in Dumas' Complaint must be disregarded for purposes of summary judgment. And much of the affidavit from her husband Jerome Casimir ("Casimir") that Dumas has submitted must likewise be set for naught, for it presents assertions that conflict with his earlier deposition testimony and cannot now be properly relied upon by Dumas to generate a material issue of fact (Russell v. Acme-Evans Co., 51 F.3d 64, 67-68 (7th Cir. 1995)). This Court therefore considers only the portions of the Casimir affidavit that are not so tainted, rendering it unnecessary to grant Dovenmuehle's motion to strike the affidavit as a formal matter.

4

to allege facts that support the legal claims she has set forth. And as to the remaining claims, Dumas has not provided any meaningful evidence to refute the facts presented by Dovenmuehle that clearly establish the nonviability of the claims presented. What follows is a brief description of the relevant facts that have been presented, viewed where possible in the appropriate light favorable to Dumas, and then a discussion of each of Dumas' claims.

## Factual Background

In August 1995 Dumas assumed a mortgage for property at 47 West 114th Street, Chicago (D. St. 12).[3] At that time the mortgage was being sub-serviced by Dovenmuehle, which received a fee from the mortgagee for collecting payments from the mortgagor (D. St. ¶¶8, 10). Dumas notified Dovenmuehle that she had assumed the mortgage by a letter dated November 8, 1995 (D. Ex. 6).

Beginning with a payment made September 29, 1995, Dumas made payments to Dovenmuehle for about a year after she assumed the mortgage (D. Ex. 7). Perhaps Dumas intended the September 29 payment to cover the October 1 mortgage installment, but it was instead applied--as was certainly permissible--to then-outstanding prior installments that had been due August 1 and

---

[3] Dovenmuehle's submissions will be cited throughout this opinion as "D. St. --" or "D. Ex. --", while citations to Dumas' submissions will carry the prefix "BD."

5

September 1, 1995 (D. St. ¶18). Thereafter, even though Dumas made payments roughly once a month, all of her payments were treated as late because the payments had never been made to bring the mortgage fully current (D. Ex. 7). In August 1996 Dumas abruptly stopped remitting payments to Dovenmuehle (D. St. ¶19). At that time the remaining principal on the loan was $471.84 and there was a positive escrow balance (D. Ex. 7).

Between August and October 1996 Dovenmuehle sent numerous notices to Dumas informing her that the mortgage was delinquent (D Ex. 8). At least one of those notices--a letter dated October 16, 1996 notifying Dumas that $968.52 was owed (D. Ex. 8)-- reached its destination, as evidenced by Dumas' having responded with a letter to Dovenmuehle stating her view that only $398.00 was owed and telling Dovenmuehle that she would make no payment at all because Dovenmuehle's October 16 letter warned that "any amount less than the total due won't be accepted" (D. Ex. 9).

Dovenmuehle ultimately agreed with Dumas that something less than $968.52 was outstanding (D. Ex. 10). Through its Assistant Counsel Paul Brask it informed Dumas that the actual amount of delinquency was $843.90 and offered her the option of paying the loan off without reinstatement before February 2, 1997 (id.). Dumas did not quarrel with that revised figure, responding instead with another letter on January 13, 1997 that asked for forbearance on the loan until March 1 (D. Ex. 11).

6

After several more months of nonpayment, Dovenmuehle (this time through its administrative assistant Norma Bourbeau) wrote Dumas a June 26, 1997 letter stating that her mortgage file was being forwarded to a law firm for foreclosure (D. Ex. 12). Dumas consistently denied ever receiving that letter during her deposition, and in fact she has denied ever hearing from Dovenmuehle regarding any foreclosure proceedings (D. Ex. 32 at 248-52).[4] But that assertion is directly belied by a letter from Dumas to Dovenmuehle written in 1999, in which Dumas said that "the Administrative Assistant Norma Bourbeau informed me to contact one of your legal firm regarding my accounts or foreclosure FROM THAT POINT ON" (D. Ex. 13).

As it happened, the foreclosure proceedings never progressed beyond the planning stage: No foreclosure complaint was ever filed against Dumas. Instead the mortgagee decided to write off the loan rather than pursue foreclosure because of the low amount of the outstanding principal (D. Ex. 29). Following that decision, Dovenmuehle issued a satisfaction of the mortgage (D. Ex. 14).

Dumas' primary complaints relate to Dovenmuehle's credit reporting during the events just described. In particular she complains that Dovenmuehle made numerous reports to credit

---

[4] D. Ex. 32 reproduces portions of Dumas' deposition, which is hereafter cited "Dumas Dep. --," omitting further references to D. Ex. 32.

reporting agencies after August 1996 indicating that her loan was delinquent. And she targets Dovenmuehle's later reports to agencies indicating that foreclosure proceedings had been initiated and then redeemed. Beyond that she claims that Dovenmuehle sent her a fraudulent letter that informed her that she was not being reported as delinquent. Finally, she appears to suggest that Dovenmuehle was engaged in deceptive business practices because it issued the mortgage satisfaction in the name of the original mortgagor rather than in her name. Based on Dovenmuehle's actions, Dumas claims that she was unfairly denied credit for several loans and that she has suffered emotional harm and humiliation.

## Credit Discrimination Claims

In an initial attempt to fashion a cognizable claim for federal relief, Dumas has asserted violations of two civil rights statutes that relate to credit discrimination. First she cites the Federal Housing Act, 42 U.S.C. §3605(a):

> It shall be unlawful for any person or other entity whose business includes engaging in real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

And she also cites the Equal Credit Opportunity Act, 15 U.S.C.

§1691(a)(1):[5]

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction--
>
> > 1. on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract).

Latimore v. Citibank Fed. Sav. Bank, 151 F.3d 712 (7th Cir. 1998), construing the requirements for a prima facie case of credit discrimination, has declined to adopt as a general matter the kind of burden shifting commonly applied to employment discrimination cases as in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Instead burden shifting applies only in the relatively rare situations where evidence is presented that would permit a comparison of the credit treatment of (say) different races in similar situations (Latimore, 151 F.3d at 715).

Because Dumas has made no attempt at such a showing here, no shifting of burdens is appropriate. She must rather establish her prima facie case by showing "that there is enough evidence, direct or circumstantial, of discrimination to create a triable issue" (Latimore, 151 F.3d at 715). In those terms she has failed utterly, having proffered no evidence that would even inferentially support the notion that discrimination was in play here. Instead she has lobbed vague and unsupported accusations

---

[5] All further citations to provisions of Title 15 will simply take the form "Section --."

in Dovenmuehle's direction.

For example, in response to Dovenmuehle's contention that it was unaware of her race because it does not track the race of the mortgagors for the loans it sub-services (D. Ex. 2 ¶3), Dumas claims that both defendants must know her race because they know her address and because "[i]t's easy to know people's race by the geographical area you live in" (Dumas Dep. 155). And as the only possible basis for a claim that Dovenmuehle's behavior was motivated in any way by race, she asserts that a receptionist "acted funny" when she visited Dovenmuehle to make a payment and that another Dovenmuehle employee "got kind of smart on the telephone" (id. 150-51, 26).

That does not even begin to raise a triable issue that Dovenmuehle discriminated on the basis of race at any point during the events at issue here. And because no prima facie case of credit discrimination has been made, summary judgment is appropriate under both civil rights statutes upon which Dumas relies (see Latimore, 151 F.3d at 716).

Beyond that, there is an additional problem with Dumas' ECOA claim that bears mention. Although Complaint ¶42 alleges that Dumas "is an applicant within the meaning of the Equal Credit Opportunity Act" (hereafter "ECOA"), she has provided no evidence that would bring her within the statutory definition of that term in Section 1691a(b):

> The term "applicant" means any person who applies to a
> creditor directly for an extension, renewal, or
> continuation of credit, or applies to a creditor
> indirectly by use of an existing credit plan for an
> amount exceeding a previously established credit limit.

Dumas has never even suggested that she applied (directly or indirectly) to Dovenmuehle for credit, and the substance of her claims is unrelated to any credit decision made by Dovenmuehle.[6] Instead Dumas charges Dovenmuehle with malfeasance as to its credit reporting--clearly not a cognizable ECOA claim.

Despite Dumas' empty attempts to drag race into the mix at every conceivable stage,[7] an objective recap of Dumas' charges is

---

[6] Notwithstanding her pro se status, Dumas is not in any position to claim unfamiliarity with the law as a basis for her unwarranted attempts to fashion an ECOA claim out of the facts alleged here. On two prior occasions she has made similar efforts to bring an ECOA claim despite the absence of an application for credit, and in both cases those efforts have been rebuffed on summary judgment (see Dumas v. City of Chicago, 2000 WL 1597787, at *1 (7th Cir. Oct. 24, 2000), reported in table at 234 F.3d 1272; Dumas v. Sentinel Mortgage Corp., 2003 WL 22859807, at *3-4 (N.D. Ill. Nov. 26, 2003)). Indeed, under the circumstances this claim must be viewed as blatantly frivolous--Dumas could well be sanctioned for such repeated abuse of the litigation process.

[7] For example, Dumas includes various allegations that other lenders that purportedly relied on the credit information that Dovenmuehle provided were racist, just as she charges Dovenmuehle to have been. Dumas seeks to make those assertions relevant to her claims against Dovenmuehle by charging in her response that it has "participate[d] in conspiracy to discriminate and is alleged to be a redlining conspiracy and racist attempt to discriminate 'Dumas' because she is Afro-American" (BD. Mem. 10). But apart from her not having pleaded any such conspiracy (at least not as to any Fair Housing Act violation), she offers nothing other than her own apparent bias to "support" her generalized pejorative charges.

11

that Dovenmuehle assertedly (1) engaged in deceptive business practices toward her and (2) reported erroneous information about the status of her mortgage to various credit agencies. This opinion will take up the merits of those contentions shortly. But what controls at this stage of the analysis is that nothing has been tendered that raises even an arguable whisper of racial discrimination, so that summary judgment must be and is granted as to both of Dumas' civil rights claims.

## Fair Credit Reporting Act

Dumas has also sought to establish a claim under the Fair Credit Reporting Act (Sections 1681-1681u, provisions of which are hereafter cited "Section --," omitting the repetition of "15 U.S.C."). In so doing, she points to Section 1681s-2(a), which as part of its 1996 amendments created a duty on the part of furnishers of credit information to provide accurate information.

But that ignores other provisions of Section 1681s-2 that flatly bar her attempt to bring this private suit. To that end Section 1681s-2(d) (emphasis added) provides:

> Subsection (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section.

And Section 1681s-2(c) reinforces that exclusivity by expressly making the Fair Credit Reporting Act's civil liability provisions (Sections 1681n and 1681o) inapplicable to violations of Section 1681s-2(a). Taken together, those two provisions doom any effort

12

by Dumas to bring a private suit to enforce what she has characterized as a Section 1681s-2(a) violation.

In an effort to respond, Dumas cites to Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057 (9th Cir. 2002) as purportedly providing support for her efforts. But Nelson, id. at 1059 actually reaffirms the unavailability of private enforcement for violations of Section 1681s-2(a) before going on (id. at 1059-60) to recognize a private right of action for violations of Section 1681s-2(b). So that provides Dumas no comfort.

If Dumas were instead to try to invoke Section 1681s-2(b), she would fall at another hurdle: the absence of any evidence that Dovenmuehle failed to respond adequately after having received notice of a dispute from a credit reporting agency. As Nelson, id. at 1060 acknowledges, the Fair Credit Reporting Act "has been drawn with extreme care, reflecting the tug of the competing interests of consumers, [credit reporting agencies], furnishers of credit information, and users of credit information." And by its terms, Section 1681s-2(b) imposes duties on furnishers of information only "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title," and the latter section in turn imposes a duty on credit reporting agencies to notify furnishers when a dispute has been reported.

In sum, then, any private claim seeking to establish a

13

violation of Section 1681s-2(b) must show that a furnisher of information failed to fulfill its duty once notice of a dispute was received from a credit reporting agency. But Dumas has provided no evidence at all along those lines.

In short, no facts have been presented that would support any claim by Dumas under the Fair Credit Reporting Act. Hence summary judgment is also granted as to that claim.

## Illinois Consumer Fraud and Deceptive Business Practices Act

What remains is a state law claim under the Illinois Act, 815 ILCS 505/2 et seq. Because this opinion has already found that all of Dumas' federal claims lack merit, that determination could well trigger the without-prejudice dismissal of any remaining state law claims under the principle exemplified by United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). But where the outcome is clear and judicial economy would be disserved by dismissal, a federal district court may choose to act on any remaining supplemental claims (Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir. 1993)). That approach is called for here.

To make out a claim under the Illinois Act, Dumas must prove (1) a deceptive act or practice by Dovenmuehle, (2) Dovenmuehle's intent that Dumas rely on the deception and (3) that the deception occurred in the course of conduct involving trade and commerce (Connick v. Suzuki Motor Co., 174 Ill.2d 482, 501, 675

14

N.E.2d 584, 593 (1996)). And Dumas must "also demonstrate that the fraud complained of proximately caused [her] injury" (Zekman v. Direct Am. Marketers, Inc., 182 Ill.2d 359, 373, 695 N.E.2d 853, 861 (1998)).

Most of Dumas' assertions fail to meet even the first of those requirements, because the actions complained of can in no way be considered deceptive in light of the evidence. For example, Dumas contends that Dovenmuehle's reports to credit agencies that she was delinquent were deceptive or fraudulent, pointing to the satisfaction piece and to Dovenmuehle's December 6, 1996 letter. But neither of those documents establishes in any way that Dovenmuehle's reporting was suspect.

As for the former document, the eventual satisfaction of a mortgage says nothing about the propriety of reporting delinquencies before the issuance of the satisfaction. And as for the letter, while it acknowledged that Dovenmuehle had made a minor error as to the amount of the delinquency, it reconfirmed the fact of the delinquency itself (D. Ex. 10). And that was indeed a fact: Dumas herself never argued in her letters to Dovenmuehle that it was in error in that respect, instead asking a short forbearance on the delinquency on account of her financial troubles (D. Ex. 11).

Dovenmuehle has provided documentation that demonstrates that Dumas was chronically behind on her payments (D. Ex. 7),

15

that it made numerous efforts to inform her of that delinquency (D. Ex. 8) and that Dumas herself was aware of her delinquency (D. Ex. 11). In the face of that proof, and having provided no evidence to the contrary, Dumas cannot now be heard to complain that Dovenmuehle's decision to report her delinquency was an act of deception or fraud.

In a different attempt to claim fraud, Dumas cites the July 12, 2001 letter that Dovenmuehle (through Julie Novak, hence the "Novak letter") sent Dumas in response to her demand that correction letters be issued to credit agencies (D. Ex. 16). In the course of that response, the Novak letter informed Dumas that "there is no indication that Dovenmuehle Mortgage, Inc. reported you as delinquent to the credit bureaus to whom we regularly report. Therefore, it is not necessary to issue correction letters."

At various times in her submissions Dumas appears to make three possible claims based on that language. None survives scrutiny.

First Dumas suggests that the Novak letter's representation as to delinquency was fraudulent because Dovenmuehle was in fact reporting her status at that time as "foreclosure redeemed" (D. Ex. 17). But of course foreclosure and delinquency are two different concepts, as Dumas herself is aware (Dumas Dep. 256). And Dumas does not suggest that Dovenmuehle was reporting her as

16

delinquent as of July 12, 2001 (D. Ex. 17), so that argument fails to get off the ground.

Dumas gets no further with her more general quarrel that it was somehow fraudulent for Dovenmuehle to report her status as "foreclosure redeemed" at all. Dumas contends that Dovenmuehle should not have reported anything related to "foreclosure" because she did not receive notice of any foreclosure proceedings. As discussed earlier, that is a dubious claim given Dumas' later reliance on the information provided in the letter that announced Dovenmuehle's intentions along those lines.

But even if, despite all that, Dumas' nonreceipt of notice were to be assumed for present purposes, Dovenmuehle did not act outside of its rights in reporting the initiation of foreclosure proceedings: Dumas was unquestionably delinquent on her mortgage payments, and Dovenmuehle had "taken steps within its own organization to initiate the foreclosure process" (<u>Voyles v. Sandia Mortgage Corp.</u>, 196 Ill.2d 288, 299-300, 751 N.E.2d 1126, 1133 (2001)). Its post-satisfaction report that the foreclosure was redeemed was likewise accurate. And that means that the Novak letter correctly informed Dumas that no correction letters needed to be issued.

Finally, Dumas reads the language in the Novak letter as a representation from Dovenmuehle that it <u>never</u> reported her as delinquent. And if that were accurate, the statement would of

17

course be a false representation: Dovenmuehle has admitted that it repeatedly made reports of delinquency. For its part, Dovenmuehle contends that the Novak letter is not deceptive because it refers to reporting only at the time of the letter. But even if Dumas' reading were to be accepted, her claim would still fail because she has presented no evidence that Dovenmuehle intended her to rely on the deception or that she actually suffered any injuries as a result.

On that latter score, Dumas has identified only two claimed harms in the course of this lawsuit: She has asserted that Dovenmuehle's actions led her to be turned down for loans and that she has suffered humiliation and emotional distress as a result of her treatment. Again neither contention withstands analysis.

As to the first of those purported harms, although Dumas has referred to four loans that she claims to have been affected by Dovenmuehle's actions, no activity took place as to any of those applications after the issuance of the Novak letter. And Dumas has not shown (or even alleged) any facts to suggest a denial of any loan after July 12, 2001 (much less that Dovenmuehle's deception was somehow a proximate cause of any such denial).

As to the second claimed injury, Dumas offers only her own conclusory statements of emotional harm (Dumas Dep. 282-85). But such statements are insufficient to create an issue of fact

"unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action" (Denius v. Dunlap, 330 F.3d 919, 929 (7th Cir. 2003)). Because this is plainly not such a case, Dumas' failure to "explain the circumstances of [her] injury in reasonable detail" (id.) sinks her emotional damages claim.

## Conclusion

Despite the inadequate and often incendiary nature of Dumas' submissions in this case, this opinion has essayed to treat them in a dispassionate way. Indeed, it has dealt with them at greater length than they really merit, in an effort to demonstrate the total absence of any basis for relief on any of the claims Dumas has raised. It seems most likely that Dumas, given her predilections, will not accept the outcome reached today as a just result. But what must control is not her subjective mindset, but rather the fact that the claims Dumas has advanced simply have not been supported (and in any event could not be supported) by the evidence. For that reason Dovenmuehle is entitled to a judgment as a matter of law, and summary judgment is granted in its favor. This action is dismissed.

_____
Milton I. Shadur
Senior United States District Judge

Date: June 23, 2005

19

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BETTY J. DUMAS )
    Plaintiff, )
v. ) No. 02 C 6271
) Judge Milton I. Shadur
DOVENMUEHLE MORTGAGE, INC., et al. ) Magistrate Judge Schenkier
    Defendants. )

RECEIVED APR 2 7 2005
MILTON I. SHADUR
SENIOR U.S. DISTRICT JUDGE

## PLAINTIFF RESPONSE TO DEFENDANTS' MOTION TO STRIKE

Plaintiff Betty J. Dumas, prose must hereby make a response, to Defendant's Motion To Strike, because it leads the court outside the facts and a misrepresentation of discovery material in an alleged attempt by Dovenmuehle, to use their money and education to pretend as if they don't understand how some of us Negroes because its not intelligent/White enough for them.

The court will generally rule for a White Million Dollars Law Firm and against a Negro, under a court approve lie with case law and play like when a Prose Negroes bring up racism that us Negroes be a lie and did not prepare the documents like an attorney that is now warranting my response.

Many Negroes take to the street seeking justice and in rap music because some Afro-American leaders have sold-out their community, as The Community Development Block Grant now goes to Whites and as a pay off to government workers, politicians and churches for votes, as equal access to government contracts don't reach the urban community without violence because many White lawyer will fight to discrimination Negroes from generation to generation with a minority fronting set aside contract as a cover-up for discrimination and discreditment of Black Business and their Home Equity, like they did my great aunt Margaret King know as "BIG SISTER".